The Honorable Lonnie P. Clark State Representative P.O. Box 406 Berryville, AR 72616
Dear Representative Clark:
This is in response to your request for an opinion regarding Act 609 of 1989, the Arkansas Public School Choice Act of 1989. Your questions are restated as follows:
 1. Does the term "by resolution" in Sections 5 and 6 of Act 609 of 1989 mean a resolution such as a city or county would adopt, i.e., must this resolution be read and adopted in compliance with other laws, or does this mean that minutes of the board meeting are sufficient for the school district to not admit nonresident students?
 2. What, specifically, does the phrase "specific standards for acceptance or rejection of applications", in Section 6 of the act, mean?
 3. What is the procedure that a parent or guardian must follow in order to send a nonresident pupil to a district for the 89-90 school year?
In response to your first question, we cannot conclude, in the absence of a clearer expression of legislative intent, that the procedure for adoption of a resolution by either a city or a county will generally apply in this regard.
Act 609, which establishes a public school choice program, states in Section 5 that "[a] school board may, by resolution, determine that it will not admit any nonresident pupils to its schools pursuant to this Act." (Emphasis added.) Section 6, which addresses the basis for admission decisions, states in part that "[t]he school board of any participating district must adopt, by resolution, specific standards for acceptance and rejection of applications." (Emphasis added.)
The act does not define or outline the requisite procedure for adoption of these resolutions. Arkansas Code of 1987 Annotated6-13-619 does, however, offer guidance wherein it establishes procedures pertaining to school board meetings. Subsection (c)(1) of 6-13-619 states that "[a] majority of a quorum voting affirmatively shall be required for the passage of any motion or resolution." It may therefore be concluded that a majority of a quorum is necessary for adoption of the resolutions referenced in Sections 5 and 6 of Act 609 of 1989. A quorum is defined under6-13-619(c)(4) as "a majority of the membership of the board."
With regard to the applicability of any procedures for resolutions of other governmental entities, it must be noted that there is no standard procedure in this regard; rather, the general procedures vary. For instance, with respect to cities, the general requirements that bylaws or ordinances "be recorded in a book kept for that purpose" (A.C.A. 14-55-205) and that they "be published in some newspaper of general circulation" (A.C.A.14-55-206(a)(1)(A)) do not apply to resolutions. Nor does the reading requirement (A.C.A. 14-55-202) generally apply to city resolutions. See also Adams v. Sims, 238 Ark. 696, 385 S.W.2d 13
(1964).
On the other hand, quorum courts must maintain a county ordinance and resolution register, as a permanent record of the court. A.C.A. 14-14-903(b)(1) and (4). A proposed resolution "must be read and adopted" by a majority vote of the quorum court. A.C.A.14-14-913(d). And publication may be required where it is specified in the adopted resolution. A.C.A. 14-14-913(f).
The apparent varied nature of these procedures precludes a determination that any specific one applies for purposes of the school board resolutions envisioned under Act 609 of 1989. It is also significant to note that the legislature has in some instances specified the filing and publication procedures for particular school board resolutions. Under A.C.A.6-13-618(b)(1), the resolution adopted by the board designating the ex officio financial secretary as the district's disbursing officer, must be filed with the county treasurer and the Director of the Department of Finance and Administration. And in accordance with A.C.A. 6-13-607(a)(3), the resolution providing for the election of board members by zone must be published by the district at least thirty days before the next regular school election. It is therefore my opinion, in light of the foregoing, that the resolutions provided for under Sections 5 and 6 of Act 609 do not, as a general matter, mean resolutions such as a city or county would adopt. The provisions of A.C.A. 6-13-619 with regard to school board meetings will, in my opinion, apply in the absence of an expression of legislative intent in favor of a specifically applicable procedure in this regard. If school board resolutions are ordinarily reflected and contained in the minutes, then it may reasonably be concluded that this procedure will apply in connection with a resolution adopted under Act 609. These minutes must, of course, be maintained and filed by the secretary in a permanent record, in accordance with A.C.A. 6-13-619(b). And it must also be recognized that the legislature has mandated, under Section 6 of Act 609 of 1989, the adoption of "specific standards for acceptance and rejection of applications." These factors compel the suggestion that each resolution be in writing. See also Roberts Rules of Order Revised 34 (1943).
The complete language of Section 6 of Act 609 must be initially considered in response to your second question. This section states:
 Section 6. BASIS FOR ADMISSION DECISIONS. The school board of any participating district must adopt, by resolution, specific standards for acceptance and rejection of applications. Standards may include the capacity of a program, class, grade level or school building. Nothing in this Act requires a school district to add teachers or classrooms or in any way exceed the requirements and standards established by existing law. Standards may not include an applicant's previous academic achievement, athletic or other extracurricular ability, handicapping conditions, English proficiency level, or previous disciplinary proceedings.
It thus appears that the required "specific standards" are meant to establish the basis or criteria for admission decisions. The definition of the word "standard" in Webster's Seventh New Collegiate Dictionary (1972) includes the following: "something established by authority, custom, or general consent as a model or example: CRITERION." Webster's at 853. The legislature has indicated the type of information or criteria that may be included in the standards wherein it states, under Section 6, that the standards "may include the capacity of a program, class, grade level, or school building." The type of information or requirements that may not be included is also specified. See Section 6, above.
This office is not in a position to state, specifically, what the phrase "specific standards for acceptance and rejection of applications" means. The school board has apparently been granted some discretion in devising these standards, bearing in mind the above-mentioned limitations. And, of course, the board must be mindful of other limitations mandated under constitutional principles, such as equal protection concerns. Arbitrary or unreasonable standards must be avoided. Section 4 of Act 609 of 1989 must be considered in response to your final question. This section states:
 Before a pupil may attend a school in a nonresident district, the pupil's parent or guardian must submit an application to the nonresident district. This application must be postmarked not later than February 1, of the year in which the pupil would begin the fall semester at the nonresident district.
The language of Section 4 appears to preclude attendance at a nonresident district in the 1989-90 school year. A few examples of application dates will serve to illustrate this point. July 1, 1989, the effective date of Act 609, was the first date upon which application could be made under the act. Such an application would not, however, have been made by February of the year in which the pupil would begin the fall semester, i.e., February of 1989. We must also conclude that one cannot make application during the 1989-90 school year, for example in January of 1990, for attendance during that year, since the fall semester would already have begun at that point. Section 4 is clearly drafted in prospective terms wherein it refers to the year in which the pupil "would begin the fall semester."
In conclusion, therefore, attendance at a nonresident district will not be possible until the fall semester of the 1990-91 school year. Application must be made by February 1, 1990 for such attendance.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.